# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| **EMPEROR ELDER**, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 13 C 8103 |
| **CHICAGO TRANSIT AUTHORITY**, et al., | ) ) ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Although this Court has regularly apprised pro se plaintiff Emperor Elder ("Elder") of its view that he would be better served by retaining counsel to represent him in this action -- primarily for his benefit, but also to make easier the tasks faced by defense counsel and this Court in handling the litigation -- Elder has persisted in going it alone, to and including this Court's October 16, 2015 entry of the parties' jointly submitted proposed final pretrial order ("FPTO"). That FPTO was issued following an October 16 conference during which, in addition to discussing any problems with the FPTO that might need revision before its entry, this Court followed its uniform practice of scheduling dates for the filing of (1) any motions in limine and (2) the responses to those motions.[1]

Because Elder is acting pro se, a few words should be said on the subject of motions in limine that would be unnecessary if all parties were represented by knowledgeable counsel. Any proper FPTO effectively supplants the pleadings in a case for purposes of setting a game plan for trial, so that there are almost always issues that parties need to have resolved in advance to help

---

[1] This Court's October 19 memorandum order memorializing its approval of the FPTO and setting the schedule for the motions in limine is Dkt. No. 76.

them in planning for trial -- issues that if left open until the time of trial would cause frequent trial interruptions and sometimes actual disruption.[2]

Even though special solicitude is given to the <u>pleadings</u> of pro se litigants, that kind of overgenerous reading does not extend to the time that an FPTO has been issued and the case is ripe for trial. That message appears to have been lost on Elder, as this excerpt from this Court's most recent memorandum order (Dkt. No. 84, issued February 22 of this year) has said:

> Unfortunately Elder does not recognize that principle, so that even the post-FPTO court hearing held on January 19 of this year -- a hearing convened to identify any remaining motions in limine requiring resolution before trial -- found Elder continuing to present a moving target[2] by seeking to reraise issues already decided and to raise new issues (both of those efforts being impermissible at this stage of the litigation, for all that should remain at this point are this Court's (1) ruling on the parties' previously advanced motions in limine and (2) setting the case for trial). Because of the fluid and amorphous nature of Elder's contentions, it appears essential to pin the litigants down on the principles established to this point and, relatedly, to require them to identify the only remaining motions in limine that require court resolution.
> 
> ---
> [2] "Shifting sands" may be a more apt metaphor for Elder's attempt to inject new issues well after discovery had been closed and the parties had, in the FPTO, (1) fixed the areas mutually agreed upon and (2) identified any remaining matters that called for pretrial resolution.

Because that February 22 memorandum order concluded by directing the litigants to confirm the status of the various motions in limine (both decided and undecided), it appears to have done the job, for the responses by Elder and both sets of defendants[3] have reflected their agreement that the only remaining motions in limine that require resolution are those set out in

---
[2] Most widely publicized in that respect has been the trial of O. J. Simpson, in which such interruptions were so frequent and so disruptive that the name of the presiding state court judge -- Judge Ito -- became attached to that phenomenon.

[3] City Defendants' codefendant, the Chicago Transit Authority (the "CTA"), has responded that all of its own motions in limine have previously been ruled upon, and Elder has not disputed that.

Dkt. No. 72 by the City of Chicago and its police officer Samuel Smith (who are collectively referred to here as the "City Defendants") and responded to by Elder in Dkt. No. 78 (which he refers to as his "Reply"). This opinion accordingly turns to those matters, with City Defendants' Motions 3 through 6 having encountered no objections by Elder and are accordingly being granted here.

As for City Defendants' Motion 1, which seeks to bar Elder's primary care physician -- a Dr. Tinfang -- from testifying at the trial, Elder's response reflects a fundamental misunderstanding of the operative rules. As to any proposed testimony by a treating physician that would constitute opinion testimony,[4] although the word "expert" was not eliminated from those Rules and Advisory Committee Notes, a significant addition to those Notes that Professor Capra and this Court recommended and that became part of the Notes to Evid. Rule 702 was its concluding paragraph, which urged the avoidance of the term "expert" in trials, a recommendation that has led to the widespread use of "opinion witness" rather than "expert witness" throughout federal court trials (including their jury instructions).

That usage meshes with the disclosure requirement set out in Fed. R. Civ. P. ("Rule") 26(a)(2)(C) as to any proposed witness such as Dr. Tinfang to whom Rule 26(a)(2)(B) does not apply and who is nonetheless expected to present evidence under Evid. Rule 702 or 703. It is

---

[4] In the period immediately preceding this Court's 1999 appointment as Chairman of the Judicial Conference's Advisory Committee on Evidence Rules, it had served as head of the subcommittee that took the lead in drafting amendments to Fed. R. Evid. ("Evid. Rules") 701 through 703 and their accompanying Advisory Committee Notes. In that capacity this Court shared with the invaluable reporter to that Advisory Committee, Fordham Law School Professor Daniel Capra, the primary responsibility for shaping the work product that ultimately ended up as the final version approved by the Advisory Committee, then by the Standing Committee that serves as the umbrella Committee on Rules of Practice and Procedure and then by the Supreme Court, so that the Amended Rules and their Advisory Committee Notes -- with Congress not having rejected those revisions -- ultimately became effective on December 1, 2000.

scarcely necessary to explain the importance of and the need for that requirement. There is no question that Elder did not comply with it, and its absence cannot fairly be excused or sought to be cured at this point, when the PFTO has long since been issued and the case will be ready for trial promptly after the few remaining motions in limine have been dealt with in this opinion.

Moreover, in this instance more than one reason exists for barring Dr. Tinfang's testimony in all events. Here is a portion of City Defendants' Motion 1 that underscores why all testimony by Dr. Tinfang -- any narrative as to Elder's prior medical history as well as any opinions voiced by the doctor -- should be kept out of the trial (Dkt. No. 72 at 2):

> Dr. Tinfang's medical records indicate that after the incident in this case (which occurred on September 30, 2013) Plaintiff's next office visit with Dr. Tinfang occurred on November 22, 2013, almost two months after the incident at issue in this lawsuit. And it appears that this visit was simply a routine doctor's appointment to evaluate Plaintiff's purported ongoing medical conditions that predate the incident at issue in this case by several years.
>
> The medical records from Dr. Tinfang do not mention the incident in this case, nor do they include any opinions that link Plaintiff's preexisting conditions to the incident in this case.

Nor are those objections countered by any medical records that Elder produced either during discovery or after the pretrial conference, both because of the absence of any causation opinions on the doctor's part and because no other relevant linkage of those records to the incident sued upon here has been shown. Elder's purported reply argument in Dkt. No. 78 at pages 2 and 3 is really nonresponsive. In short, City Defendants' Motion 1 is granted.

That then leaves for resolution only City Defendants' Motion 2, which comprises a number of subparts. Those will be dealt with here seriatim.

Subpart 1 seeks to bar Elder's Exs. 1 and 2, which are respectively the Rule 26(a) disclosures by the CTA and by City Defendants. There City Defendants point to Evid. Rules 401

and 402 (bearing on relevance) and 403 (posing the danger of unfair prejudice under that Rule's balancing process) as the bases for exclusion. Elder's reply is framed in wholly general terms that do not really specify anything that would counter those arguments. Hence the appropriate action, which is hereby ordered, is to grant subpart 1 of City Defendants' Motion 1 without prejudice to Elder's possible ability, during the period before trial, to single out any particulars in those documents that would overcome the hurdles barring admissibility.

Subpart 2 seeks to bar a post-FPTO proffered prescription issued by Dr. Tinfang for "homemaker services" -- a prescription dated June 12, 2014 (almost a year after the incident sued on here) that was neither disclosed to defense counsel during discovery nor listed as an FPTO exhibit. City Defendants have understandably characterized Elder's "failure to turn this document over during more than two years of litigation" as "inexcusable" (Dkt. No. 72 at page 5). That is really an understatement, as the discussion of that issue in Dkt. No. 72 at pages 4-6 explains at length. Once again Elder cannot prescribe his own rules for the conduct of litigation, as his really nonresponsive Reply seeks to do. Hence that second subpart of City Defendants' Motion 2 is granted in full.

Next, subpart 3 seeks to bar Elder's Ex. 10, his state ID card. Here too Elder has simply refused to play by the rules by not producing a copy of that document during the discovery process. That is not merely a technical objection, for the federal litigation system has long since abandoned the old "fox-hunt" or "sporting" approach to litigation, under which trials were not preceded by a carefully-prescribed discovery practice. Elder's nonproduction has deprived City Defendants of any opportunity to inquire into or to evaluate any basis for bringing that document into the trial -- and with discovery having long since been closed and the case ready for an early trial, it is too late to launch that process now. So that subpart of Motion 2 is also granted.

Finally, subpart 4 seeks to bar Elder's Ex. 12, titled "DHS Managed Care Plan." That document is dated December 4, 2012, and it too was never produced during nearly two years of discovery in this action -- it was in fact first produced on November 12, 2015, nearly a month after the pretrial conference and its contemporaneous issuance of the FPTO, and just two days before Elder's Motions in Limine were due. If barring that document injures Elder and his prospects at trial (something that cannot be evaluated in light of his failure to have presented it for consideration), that would be another self-inflicted wound. So that subpart of Motion 2 is also granted.

### Conclusion

For the reasons stated in this opinion, City Defendants' Motions 3 through 6 are granted without objection. As for the other two motions, on which the parties have clashed:

1. Motion 1 is granted.

2. Motion 2 is granted in its entirety, subject to the possibility that some part or parts of its subpart 1 (relating to Elder's Exs. 1 and 2 and City Defendants' Rule 26(a) disclosures) may be shown at trial to be arguably relevant and therefore not vulnerable to exclusion under Evid. Rule 403.

With all of the remaining motions in limine now having been resolved, a status hearing is set for 8:45 a.m. March 25, 2016 to discuss the scheduling of the case for trial.

_____
Milton I. Shadur
Senior United States District Judge

Date: March 21, 2016