**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| EMPEROR ELDER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 13 C 8103 |
| ) | |
| CITY OF CHICAGO AND OFFICER ) | |
| SAMUEL SMITH, ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM ORDER

On October 16, 2015 this Court entered the Final Pretrial Order ("FPTO") that the parties then remaining in the case had agreed upon in this action brought pro se by plaintiff Emperor Elder ("Elder").[1] Time was then expended in this Court's having to rule on motions in limine and, more significantly, by the parties' efforts to reach settlement that ultimately resulted in the case remaining pending only against the City of Chicago and its Officer Samuel Smith. Ultimately the need to reconcile the dates of availability of both sides of the litigation (including their witnesses) and of this Court resulted in the scheduling of trial to begin on Monday, August 22, 2016.

Unfortunately, at the end of the week preceding the scheduled trial date plaintiff Elder communicated to his adversaries and this Court the news that he had just suffered a fall that

---

[1] As the case number indicates, the action was just a few weeks short of two years old at that time. This Court essays no criticism in that respect, but the slow going during that time frame was a precursor of the delays have occurred since then.

resulted in a short-term hospitalization. That of course necessitated the vacation of the August 22 trial date. While this Court then planned to reconcile everyone's time commitments in order to set a new date for trial, it was surprised to receive a document captioned "Amended Notice of Defendant's City of Chicago and Officer Samuel Smith's Motion for Leave to Amend the Final Pretrial Order" (the "Motion"), noticed up by those remaining defendants for presentment on September 15. It set the matter over to October 17 to give Elder the opportunity to respond, and on that date the Motion was further continued to November 3.

This memorandum order will memorialize this Court's rulings in an extended (and sometimes contentious) hearing on that date. During the course of that proceeding Elder proved once again to be a very difficult litigant to deal with, constantly exhibiting at least two unfortunate tendencies:

> 1. Whether because of a lack of understanding or a sense that he knows better than anyone else (including this Court) how a case involving a non-lawyer acting pro se should proceed, he stubbornly resisted this Court's efforts seeking to aid him on that score.
>
> 2. That and other attitudinal problems created an environment in which Elder would not really listen to what was being said to him, simply waiting instead for a pause in which he could voice his own views.

It should be said at the outset that this Court considered the Motion to be very problematic. It is of course true that the FPTO in this case included this penultimate paragraph

preceding this Court's signature (a paragraph that is a part of the standard Form LR 16.1.4 prescribed by this District Court):

> This order will control the course of the trial and may not be amended except by consent of the parties and the Court, or by order of Court to prevent manifest injustice.

But because (as explained earlier) the case would normally have gone to trial with the existing FPTO spelling out the game plan for that purpose, with that having been thwarted by an unfortunate accident, this Court would be loath to entertain any afterthought modifications, and it therefore directed counsel for defendants to explain why the proposed amendment of the FPTO should be entertained.

It developed at the November 3 hearing that with two exceptions the purpose of the Motion was simply to provide any necessary foundation for certain exhibits that might likely serve to impeach Elder, during his cross examination, as to some anticipated testimony in his case in chief. Those exhibits, which comprised (1) Elder's medical records from St. Bernard Hospital on the date of the incident sued upon and (2) a statement that he made to the Chicago Transit Authority (one of the defendants that are now out of the case by reason of settlement) describing the incident, were unexceptionable.

That of course put an entirely different light on those aspects of the Motion , but this Court had a good deal of difficulty in conveying to Elder the fact that any question as to the foundational support for exhibits in trials, unless there is some question as to the authenticity of such exhibits, is normally handled by agreement between the parties (or, to the same effect, by the nonassertion of any foundation objection), rather than by compelling the appearance of a witness. When Elder finally grasped that concept, he offered no objection, and that portion of

the Motion was granted. Two other aspects of the Motion were denied by this Court without requiring any responsive input from Elder: (1) the proposed addition of video footage of Elder at the 95th Red Line Station at various dates other than the date of the incident sued upon and (2) copies of Elder's pro se complaints filed in a number of other cases in this District Court and in state courts: Case Nos. 13 L 2010, 14 L 3463, 14 C 6495, 14 C 9835, 14 C 9836 and 16 C 878.

Finally, an inordinate amount time at the November 3 hearing had to be devoted to this Court's renewed urging that Elder avail himself of the services of a member of this District Court's trial bar, both to assist him in the orderly presentation of his case in chief (particularly but not exclusively in the presentation of his own testimony) and perhaps in other aspects of the trial. This Court sought to explain to Elder -- but in vain -- that to permit him (1) to pose questions to himself and then answer those questions or (2) even worse, to engage in an extended narrative would create a major risk of his communicating something to the jurors that would poison the evidentiary well. It is of course true that if such an eventuality takes place in a lawyer-handled trial, the Judge presiding over the case can give a cautionary instruction to the jury -- but common sense teaches that although such a practice may insulate against a reversal on appeal, it is often quite unrealistic to consider that the prohibited information can be erased from the minds of the lay jurors.

During the course of colloquy on that subject, Elder confirmed that what he indeed had in mind that was that he would conduct his own testimony in an extended narrative form, even without first identifying any question to which any part of his narrative was directed. It also turned out that Elder's resistance was in part due to his misconception that any trial bar counsel designated to assist him would have to be paid for his or her services. When Elder finally

listened to this Court's explanations seeking to dispel his misunderstandings and the reasons for this Court's rejecting them, it appeared that he has acceded to this Court's ruling on that score, and this Court will cause such a designation to be made.

What has been said here has disposed of the Motion by its partial grant and partial denial. Finally, this Court has set the case for trial at 9:30 a.m. on December 12, 2016.

                                                                      _____
                                                                      Milton I. Shadur
Date: November 4, 2016                          Senior United States District Judge